**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

| | | |
|---|---|---|
| OHIO VALLEY PHYSICIANS, INC., | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| BIG SANDY HEALTH CARE, INC. | ) | |
| *Defendant.* | ) | **JURY DEMANDED** |
| | ) | |
| Serve:  Ancil Lewis | ) | |
|     1709 Kentucky Route 321, Ste. 3 | ) | |
|     Prestonsburg, KY 41653 | ) | |
|     *Via Certified Mail* | ) | |

<u>**VERIFIED COMPLAINT**</u>

Plaintiff Ohio Valley Physicians, Inc. ("OVP"), by counsel, for its Verified Complaint against Defendant Big Sandy Health Care, Inc. ("Big Sandy"), states as follows:

**JURSIDICTION AND PARTIES**

1.     This is an action for injunctive and other relief to remedy OVP's rights under Section 504 of the Rehabilitation Act and Title II of the Americans with Disabilities Act ("ADA").

2.     The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. 1331 because it involves a federal question as to whether Big Sandy violated and continues to violate federal law.

3.     Venue is proper in the United Stated District Court, Eastern District of Kentucky pursuant to 28 U.S.C. Sec. 1391(b) and Local Rule 3.2 because a substantial part of the events giving rise to the subject claim occurred in this Judicial District; the property that this is the subject of this action is situated in this Judicial District; and Big Sandy's principal place of business is in this Judicial District.

4845-7201-2951

4.      OVP is presently, and was at all relevant times stated herein, an Ohio corporation with its principal place of business at 300B 8th Street, Huntington, WV 25701, and is authorized to conduct and is conducting business in the Commonwealth of Kentucky.

5.      OVP's principal business is providing health care services, including the provision of medication assisted treatment ("MAT").

6.      Upon information and belief, Big Sandy presently, and was at all relevant times stated herein a Kentucky corporation doing business in the Commonwealth of Kentucky with its principal place of business at 1709 Kentucky Route 321, Suite 3, Prestonsburg, KY 41653.

7.      Upon information and belief, Big Sandy's principal business is providing health care services.

## FACTS

### OVP Provides Services to Patients Struggling with Opioid Addiction

8.      OVP operates nine clinics in Kentucky and several other states, including Ohio, West Virginia, and South Carolina.

9.      OVP currently employees more than 150 employees.

10.     Most of OVP's employees are trained physicians, advanced practice providers, nurses, counselors, and project managers.

11.     OVP operates a clinic in Inez, Kentucky at the Martin County Community Health Center (the "Community Building").

12.     Among other services, OVP provides MAT to its patients that suffer from opioid addiction at the Community Building through its MAT program.

13.     In 2016, the Commission on Accreditation of Rehabilitation Facilities ("CARF") International accredited OVP for MAT and counseling services.

4845-7201-2951

14.     To date, Ohio Valley Physicians is the only organization in West Virginia and Kentucky that is CARF-accredited for MAT and counseling services.

15.     The MAT program offered by OVP includes extensive counseling and therapy, as well as the provision of medication, which provides OVP's patients with an opportunity to overcome this epidemic that has ravaged eastern Kentucky.

16.     To enter OVP's MAT program and qualify as a patient, the individual present to OVP for an initial screening with a counselor to determine if the program is appropriate for the individual and if the individual is motivated by treatment.

17.     The patient must be compliant with all rules and expectations outlined in the treatment contract to be able to successfully progress through and complete the program

18.     Among other things, an individual must show that he or she has struggled with addiction for a certain length in time and has been unable to work and function because of his or her addiction.

19.     Such a showing must be verified in writing by an employer, parent, parole or probation officer, or another provider.

20.     Patients are seen for counseling sessions at least once a week during the first month in the program, which provides medical providers and counselors an opportunity to develop the most effective therapeutic plan to help each patient.

21.     The program may take weeks, months, or years, depending on the severity of the patient's condition.

22.     As explained by Bradley Barnett, a former opioid addict who is now a licensed therapist employed by OVP:

> In [MAT], you combine a medication that helps you maintain clinical stability with a therapist who's there to help you in any way

3

you need. If you want to come off the medication eventually, we can work on that. If you have a fear of withdrawal, we can work on that, too. We can develop and implement effective coping strategies that provide the foundation to a purposeful recovery. We can address the root of addiction, which at its heart is a mental health problem. We can take a look at all those things—and, hopefully, you'll experience the freedom from active addiction that recovery provides.

23.     Opioid addiction substantially impairs OVP's patient's major life activities.

24.     OVP's patients struggle physiologically and psychologically and often cannot perform major life activities, including, but not limited to, parenting, working, interacting with others, and living a normal, functioning day-to-day life.

<u>OVP's Dealings with Big Sandy Related to the Community Building.</u>

25.     In 2014, the Martin County Fiscal Court (the "Fiscal Court") leased Suite #1 of the Community Building to Highlands who, in turn, subleased the space to OVP.

26.     Thus, on August 1, 2014, OVP entered into an agreement with Highlands to sublease Suite #1 in the Community Building (the "Sublease").

27.     OVP chose to open its office in the Community Building because it is the only available location in Martin County for OVP to provide MAT and be eligible for rural health clinic rates.

28.     In 2015, the Fiscal Court announced its plans to sell the Community Building.

29.     In Fall 2015, prior to the sale, OVP expressed interest in purchasing the Community Building.

30.     On January 21, 2016, prior to the sale of the Community Building, Big Sandy and OVP negotiated and reached a written agreement in which Big Sandy assured OVP that it could remain in the Community Building upon "expiration or termination" of the sublease between OVP

and Highlands, if OVP did not bid to purchase the Community Building and if Big Sandy was awarded the Community Building (the "Big Sandy Agreement").

31.     The Big Sandy Agreement clearly sets forth the term ("5 years, with an option to renew for successive five-year periods); the price ($11.00 per square foot per year); and the location ("the portion of the building it currently occupies").

32.     The Big Sandy Agreement provides that Big Sandy agrees to "lift the hours of operations restriction" for OVP and agrees that if OVP needed additional space for expansion, "Big Sandy would make reasonable attempts to design and construct, in a timely manner a suitable building addition for [OVP's] use."

33.     The Big Sandy Agreement states that the aforementioned are "assurances" and further states that "Big Sandy Health Care agrees to be bound by the above stated terms and conditions."

34.     The Big Sandy Agreement contains no exclusions as to the services that OVP is permitted to provide.

35.     It is undisputed that OVP did not bid to purchase the Community Building.

36.     It is undisputed that Big Sandy was the highest (and only) bidder and was awarded the Community Building.

37.     Upon information and belief, the Fiscal Court placed "a condition on the sale of the property that two existing leases relating to the Community Building remain intact for their natural term.

38.     Upon information and belief, as a condition to sale, Big Sandy agreed to step in the shoes of the Fiscal Court for the natural term of certain leases for the Community Building.

39.     It is undisputed that the Sublease between Highlands and OVP has expired or terminated.

40.     Since Bid Sandy purchased the Community Building and after the Sublease expired or terminated, Big Sandy has failed to honor the Big Sandy Agreement solely because OVP is providing MAT services.

41.     On April 9, 2019, counsel for Big Sandy sent a letter to OVP CEO Stacy Shy requesting that "OVP vacate the [Community Building] premises immediately upon receipt of this notice."

42.     Prior to the April 9, 2019 letter, Big Sandy CEO Ancil Lewis advised OVP CEO Stacy Shy in a letter dated February 2, 2018, that Big Sandy "has consistently and expressly prohibited [OVP] from providing addiction treatment, including the prescribing of addiction medications, such as Methadone, Buprenorphine (Suboxone and Naloxone) in the building."

43.     In a letter dated March 21, 2018, counsel for Big Sandy advised Highlands CEO Harold Warman that Highlands should advise OVP to "immediately discontinue the prescribing of addiction medication, including, but not limited to suboxone, in the Martin County Building" and further stated that this "practice has been consistently and expressly disapproved by BSHC as lessor of the Martin County Clinic building."

44.     Upon information and belief, Big Sandy will not honor the Big Sandy Agreement and permit OVP to provide MAT at the Community Building because of myths, fears and stereotypes relating to drug addiction.

45.     In Spring 2019, Big Sandy proffered a lease for the Community Building to OVP, which expressly prohibited "any and all activities that may be construed and/or interpreted, in Lessor's sole opinion, a Suboxone Clinic."

4845-7201-2951

46.     The proffered lease is in violation of federal law.

### THE REHABILITATION ACT AND TITLE II OF THE ADA

47.     The Rehabilitation Act and the ADA are to be interpreted consistently with one another

and courts frequently analyze the acts together insofar as the standards are largely the same. *MX Group,*

*Inc. v. City of Covington*, 293 F.3d 326, 332 (6th Cir. 2002).

48.     However, the "scope of the Rehabilitation Act is broader than the ADA." *Fleming v.*

*Yuma Regional Medical Center,* 587 F.3d 938, 941 (9th Cir. 2009).

49.     Section 504 of the Rehabilitation Act provides, in relevant part, that:

> No otherwise qualified individual with a disability in the United States,
> as defined in section 705(20) of this title, shall, solely by reason of her or
> his disability, be excluded from the participation in, be denied the
> benefits of, or be subjected to discrimination under any program or
> activity receiving Federal financial assistance . . .

29 U.S.C. § 794.

50.     The Rehabilitation Act prohibits entities that provide health services from denying

such benefits, giving unequal benefits, providing less-effective benefits, or providing benefits or

services in a manner that limits the participation of persons on the basis of disability.

51.     The Rehabilitation Act defines "program or activity" in pertinent part as a "corporation,

partnership, or other private organization, or an entire sole proprietorship . . . which is principally

engaged in the business of providing education, health care, housing, social services, or parks and

recreation."  29 U.S.C.A. § 794 (b)(3)(A).

52.     Thus, any "program or activity" that discriminates against a "qualified individual

with a dispersibility" and receives "Federal financial assistance" is in violation of Section 504 of

the Rehabilitation Act.

53.     A health care facility's "receipt of Medicare and Medicaid payments subjects it to appropriate federal action under Section 504 of the Rehabilitation Act." *See, e.g., United States v. Baylor University Medical Center,* 736 F.2d 1039, 1043 (5th Cir. 1984).

54.     "It is not necessary that federal funds be received for the care and treatment of the complaining plaintiff. Receipt of federal funding in the form of Medicare or Medicaid payments for the care rendered to any patient brings the treating physician, hospital or medical center within the scope of the Act." *Davis v. Flexman*, 109 F. Supp. 2d 776, 786 (S.D. Ohio 1999) (citing *Sharrow v. Bailey*, 910 F. Supp. 187, 193 (M.D. Pa. 1995) (emphasis added).)

55.     Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

56.     An entity like OVP, has standing to sue to enforce the ADA and Rehabilitation Act, based upon OVP's association with disabled recovering drug addicts who receive OVP's medication assisted treatment for drug addiction. OVP has standing because "[OVP] is not an association suing solely on behalf of its members. Instead, it is an entity suing primarily on its own behalf, because of injury it has suffered as a result of its association with individuals with disabilities." *MX Grp.,* 293 F.3d at 333.

57.     Patients struggling with opiod addiction are considered "disabled" under the ADA and the Rehabilitation Act. *Id.* at 342 ("[I]t is clear that insofar as the Rehabilitation Act or the ADA evinces a general recognition of substance abuse as a disease, discrimination on the basis of such a handicap is antithetical to one of the goals of the Act—to ensure that persons . . . are not victimized . . . by . . . *stereotypical assumptions concerning their handicap*.") (emphasis in

8

original) (quoting *Teahan v. Metro-N. Commuter R. Co.*, 951 F.2d 511, 518 (2d Cir. 1991)); *see also* 28 C.F.R. § 35.130(g).

58.     "[W]here the discrimination results from unfounded fears and stereotypes that merely because Plaintiff's potential clients are recovering drug addicts, they would necessarily attract increased drug activity and violent crime to the city, such discrimination violates the ADA and Rehabilitation Act." *Id.*at 343.

## COUNT I – CAUSE OF ACTION FOR VIOLATION OF THE REHABILITATION ACT

59.     OVP incorporates the preceding and foregoing paragraphs as if fully asserted herein.

60.     OVP has standing to sue under the Rehabilitation Act because "it cares for and/or associates with individuals who have disabilities." *MX Group,* 293 F.3d at 335 (emphasis added).

61.     Specifically, OVP provides MAT to patients who are suffering from opiate addiction at the Community Building.

62.     Upon information and belief, Big Sandy is a corporation that principally provides health care services and receives millions of dollars annually in direct federal funding and therefore falls under the purview of the Rehabilitation Act.

63.     OVP's patients are disabled under the ADA because they have a mental or physical impairment that substantially limits a major life activity.

64.     Upon information and belief, Big Sandy refuses to permit OVP to provide MAT services to its patients because of their disability.

65.     OVP's patients are otherwise qualified to participate in receiving addiction treatment through MAT.

4845-7201-2951

66.     Upon information and belief, OVP's patients are being excluded by Big Sandy from participation in, being denied the benefits of, or being subject to discrimination solely by reason of the patient's disability.

67.     Upon information and belief, Big Sandy is discriminating against OVP's patients based on myths, fears, or stereotypes associated with drug addiction.

68.     OVP has been aggrieved and/or will be aggrieved as a result of its association with these individuals with disabilities if it is no longer permitted to provide MAT at the Community Building.

69.     OVP has been aggrieved and/or will be aggrieved as a result of its association with these individuals with disabilities if Big Sandy is permitted to proffer a lease that is in violation of the Rehabilitation Act.

70.     Big Sandy's discriminatory conduct is in violation of the Rehabilitation Act.

**COUNT II – CAUSE OF ACTION FOR VIOLATION OF ADA**

71.     OVP incorporates the preceding and foregoing paragraphs as if fully asserted herein.

72.     OVP has standing to sue under the ADA because "it cares for and/or associates with individuals who have disabilities." *MX Group,* 293 F.3d at 335 (emphasis added).

73.     Upon information and belief, Big Sandy is "an instrumentality" of the Fiscal Court and therefore falls under the purview of the ADA.

74.     Upon information and belief, the Fiscal Court has instructed Big Sandy, as the Fiscal Court's instrumentality, to prohibit OVP from providing MAT to disabled recovering drug addicts at the Community Building."

75.     OVP's patients have a mental or physical impairment that substantially limits a major life activity.

76.     OVP's patients are qualified individuals with a "disability" for purposes of the ADA.

77.     OVP's patients are otherwise qualified to participate in receiving addiction treatment through MAT.

78.     Upon information and belief, OVP's patients are being excluded by Big Sandy from participation in, being denied the benefits of, or being subject to discrimination by reason of the patient's disability.

79.     Upon information and belief, Big Sandy is discriminating against OVP's patients based on myths, fears, or stereotypes associated with drug addiction.

80.     Big Sandy's discriminatory conduct is in violation of Title II of the ADA.

81.     OVP has suffered injury and/or will suffer injury as a result of its association with these individuals with disabilities if it is no longer permitted to provide MAT at the Community Building.

82.     OVP has suffered injury and/or will suffer injury as a result of its association with these individuals with disabilities if Big Sandy is permitted to proffer a lease that is in violation of the Rehabilitation Act.

**WHEREFORE**, OVP respectfully demands the following:

1.  That the Court issue an order enjoining Big Sandy from engaging in the unlawful conduct complained of herein;

2.  That the Court issue an order enjoining Big Sandy from proffering a lease that is in violation of federal law;

3.  That the Court issue an order requiring Big Sandy to proffer a lease that is not in violation of federal law;

4845-7201-2951

4.  That the Court award reasonable attorneys' fees and costs pursuant to 29 U.S.C. 794, 42 U.S.C. 12205 and other applicable law;

5.  That the Court enter judgment against Big Sandy for statutory, compensatory, consequential and punitive damages;

6.  Trial by jury on all issues so triable; and

7.  Any other relief as the Court deems just and proper.


Dated May 13, 2019                                 Respectfully submitted,

                                                   /s/ Michael Erena
                                                   Stephen S. Burchett (KY Bar ID 84489)
                                                   Christopher F. Hoskins (KY Bar ID 96274)
                                                   Michael G. Erena (KY Bar ID 96126)
                                                   JACKSON KELLY PLLC
                                                   175 East Main Street, Suite 500
                                                   Lexington, KY  40507
                                                   Telephone: (859) 255-9500
                                                   Email: steven.burchett@jacksonkelly.com
                                                          choskins@jacksonkelly.com
                                                   *Counsel for Ohio Valley Physicians, Inc.*

4845-7201-2951

## **VERIFICATION**

I, Stacey Shy, CEO of Ohio Valley Physicians, Inc., and for and on behalf of Ohio Valley Physicians, Inc., verify that the recitations set forth in the foregoing Verified Complaint are true and accurate to the best of my knowledge.

_____
Stacey Shy

STATE OF WEST VIRGINIA          )
                                )
COUNTY OF _Cabell_              )

Subscribed and sworn to before me by _Stacey Shy_ , for and on behalf of Ohio Valley Physicians, Inc., on this, the _8th_ day of May, 2019.

My commission expires: _May 7, 2020_

OFFICIAL SEAL
Tara M. Landers
Notary Public
State of West Virginia
My Commission Expires
May 07, 2020
PO Box 390
Huntington, WV 25708

_____
NOTARY PUBLIC

13

4811-5971-1638